**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

DANT CLAYTON CORPORATION,      )
                                )
                Plaintiff,         )
                                )
               v.              )     Case No. 4:24-cv-00095-TWP-KMB
                                )
ODELIZA J. SLOCUM,            )
                                )
               Defendant.    )

**<u>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

This matter is before the Court on Plaintiff Dant Clayton Corporation's ("Dant Clayton") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") ([Filing No. 4](#)) filed pursuant to Federal Rule of Civil Procedure 65.[1] Dant Clayton seeks both a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant Odeliza J. Slocum ("Slocum"). Slocum has not yet responded, so this Order addresses only Dant Clayton's request for a TRO. For the reasons discussed below, Dant Clayton's request for a TRO is **denied**.

## I.      BACKGROUND

This action arises out of Slocum's alleged misappropriation of confidential and trade secret information and alleged failure to return the property of her former employer, Dant Clayton ([Filing No. 1 at 1](#)). Dant Clayton works in the stadium and arena manufacturing industry. *Id.* at 4. "Dant Clayton's products run the gamut of arena and stadium seating, from bleachers on recreational athletic fields to 50,000 seat stadiums." *Id.* In addition to its products, Dant Clayton's customer service has allowed it to accrue significant customer goodwill and relationships. *Id.* Dant Clayton

---

[1] Dant Clayton filed its Motion pursuant to Federal Rule of Civil Procedure 65(b), not Rule 65(a), but based on its title and substance, the Court construes the Motion as both a request for a temporary restraining order *and* preliminary injunction.

has also implemented security measures to safeguard its confidential and trade secret information, including: requiring Dant Clayton employees to sign confidentiality agreements and adhere to similar policies; limiting computer access to proprietary information to a "need-to-know basis"; limiting access to Dant Clayton's secure systems to employees and other authorized individuals; and implementing IT security measures like firewalls, logins, and passwords. *Id.* at 4–6.

Slocum joined Dant Clayton in June 2023. *Id.* at 6. On or around her first day, Slocum signed a Confidentiality/Proprietary Information/Intellectual Property Agreement (the "Confidentiality Agreement") ([Filing No. 1-4 at 4](#)). Slocum originally worked as a Preconstruction Coordinator. In that role, Slocum primarily worked with customers and provided them quotes for Dant Clayton's products. Because Slocum was in a client-facing role, she had access to Dant Clayton's proprietary information, including customer lists, client contact information, inventory, pricing, marketing strategies, and business plans. *Id.* at 6.

In November 2023, Slocum was tasked with creating a new Dant Clayton website (https://dantclaytonvps.com) (the "New Website"), which "was intended to offer customers a new, efficient way to submit inquiries, receive quotes or proposals, and view Dant Clayton's products." *Id.* Slocum created the New Website through GoDaddy.com. *Id.* Slocum used her personal email to set up a GoDaddy.com account and set up automatic payments for the New Website's fees using her personal credit card, for which she was reimbursed by Dant Clayton. *Id.* at 7. While creating the New Website, Slocum had access to and used Dant Clayton's proprietary information. To minimize the unnecessary disclosure of the New Website's design features and incorporated information, Slocum was the only employee who knew the New Website's login credentials. *Id.*

In or around late February or early March 2024, Slocum reported that her company-issued laptop was not functioning. *Id.* Dant Clayton worked with a third-party contractor to extract all of

the files from the non-functioning laptop and place those files on an external hard drive. After providing Slocum with a new company-issued laptop, Dant Clayton gave her the external hard drive so she could restore her files on her new laptop. *Id.* at 7–8.

In late March 2024, Slocum started missing work without notifying her superiors. *Id.* at 8. After being absent for a week or two, Dant Clayton discovered that Slocum's office had been cleaned out. Dant Clayton subsequently learned that Slocum had instructed another employee to remove her possessions from the office and provide them to Slocum and her husband. *Id.*

On April 15, 2024, Dant Clayton employee Dan Hennessy ("Hennessy") reached out to Slocum via text message to inform her that Dant Clayton had assumed she resigned and had "off boarded" her as of April 15, 2024 (Filing No. 1-6 at 2). Hennessy also stated that Slocum needed to return her company-owned assets, including her "laptop, monitors, [and] anything else [she] may have." *Id.* Hennessy stated, "Please let me know how you plan to handle that [return], we can send a prepaid shipping label to your home." *Id.* Slocum requested that the prepaid label be sent to her. *Id.*

Slocum returned her company-issued laptop, but before doing so, she "wiped the computer of all applications and data without authorization, which has prevented Dant Clayton from recovering work product and from accessing the New Website or any of its property and information that existed on the computer." *Id.* at 9. Slocum allegedly did not return the external hard drive, and she did not send Dant Clayton the login credentials for the New Website, leaving Dant Clayton unable to access it. *Id.* at 8–9. The New Website remained active for a time after Slocum's resignation. Dant Clayton later observed that the New Website's contents had been removed and replaced with a "coming soon" banner, and a short time later, the New Website

became inactive. *Id.* at 9. An error message now appears where the New Website should be. Dant Clayton, https://dantclaytonvps.com/ (last visited July 15, 2024).

On June 3, 2024, counsel for Dant Clayton sent a letter to Slocum ([Filing No. 1-8](#)). The letter accused Slocum of ignoring Dant Clayton's requests for login credentials for the New Website and wiping her company-issued laptop to obstruct Dant Clayton from accessing its own proprietary information. The letter further stated that Slocum's actions violated her Confidentiality Agreement. The letter demanded the immediate return of any Dant Clayton property in Slocum's possession, including "the log-in credentials and any other physical property or electronically stored information in [her] possession." *Id.* at 3. The letter threatened that if Dant Clayton did not receive a response by June 7, 2024, Dant Clayton would "pursue appropriate remedies." *Id.* The Verified Complaint does not state whether Slocum responded.

Dant Clayton initiated this lawsuit on July 12, 2024, by filing its Verified Complaint alleging breach of contract, civil conversion, misappropriation of trade secrets in violation of the Indiana Uniform Trade Secrets Act and the Defend Trade Secrets Act, and violations of the Computer Fraud and Abuse Act ([Filing No. 1](#)). The same day, Dant Clayton filed the instant Motion ([Filing No. 4](#)). On July 15, 2024, the Court issued an Order directing the parties to meet with the Magistrate Judge to discuss a discovery plan, briefing schedule, and to determine a date for the hearing on preliminary injunctive relief ([Filing No. 10](#)). The Court stated that a ruling on Dant Clayton's request for a TRO was forthcoming. *Id.*

## II.      LEGAL STANDARD

A court may grant an order pursuant to an *ex parte* request only under extremely limited circumstances. *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984). Under Federal Rule of Civil Procedure 65, the movant's attorney must certify in writing any efforts to give notice and the reasons that notice should not be required, and the court must conclude that the movant will

suffer irreparable injury before the adverse party can be heard. Fed. R. Civ. P. 65(b). Under Rule 65(b)(2), a TRO may last up to fourteen days, unless before that time expires, it is extended for another fourteen days for good cause.

The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). This analysis is the same to determine if a TRO is warranted. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013). To warrant a TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) plaintiff will suffer irreparable harm if the TRO is not granted. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If these elements are satisfied, the Court must then balance the harm to the plaintiff if the restraining order is denied against the harm to the defendant if the restraining order is granted. *Id.* The greater the movant's likelihood of success on the merits, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

### III.   DISCUSSION

Before the Court reaches the two-step analysis, it must decide whether it may issue preliminary injunctive relief *ex parte* pursuant to Federal Rule of Civil Procedure 65(b). Federal Rule of Civil Procedure 65(b)(1) states that a Court may enter an *ex parte* TRO only if: "(A) specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

Dant Clayton has not met either of these prongs, and *ex parte* relief is therefore unwarranted. The Court will address these prongs in reverse order, first discussing whether Dant Clayton has adequately identified its efforts to give notice (or why notice is not required), and then

5

whether Dant Clayton has clearly shown that immediate and irreparable injury will result before Slocum can be heard.

## A.   <u>Efforts to Notify Adverse Party</u>

Dant Clayton's counsel has not filed any document certifying in writing any efforts made to notify Slocum or any reasons why notice should not be required. The record here does not indicate that Dant Clayton has attempted to notify Slocum of its Motion. Dant Clayton asserts only that it "will" serve Slocum at an unspecified date "in connection with the service of process of the Verified Complaint filed in this case on the same date as this motion." (<u>Filing No. 4 at 4</u>).

Dant Clayton also does not offer any reason why notice should not be required. In its supporting brief, Dant Clayton asserts that "Slocum would not have provided Dant Clayton with numerous excuses and lies if she had any intention to return Dant Clayton's property." (<u>Filing No. 5 at 2</u>).[2] To the extent Dant Clayton argues that notice to Slocum would be pointless, since she would only continue to ignore Dant Clayton's demands, that argument is unpersuasive. Even if Slocum would continue to oppose Dant Clayton's requests, she should still be given an opportunity to be heard on the Motion. "The stringent restrictions on the availability of ex parte TROs 'reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879–80 (E.D. Wis. 2005) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974)). The mere fact that notice might be futile in attempting to gain Slocum's compliance does not justify depriving Slocum

---

[2] Dant Clayton does not attach to its Verified Complaint or Motion any correspondence from Slocum in response to Dant Clayton's demands. Dant Clayton attaches only the text messages between Slocum and Hennessy regarding her resignation (<u>Filing No. 1-6</u>), which do not reflect noncompliance by Slocum; and Dant Clayton's June 3, 2024 demand letter to Slocum (<u>Filing No. 1-8</u>). The record is therefore unclear as to what "excuses and lies" Dant Clayton refers.

of an opportunity to be heard on Dant Clayton's Motion. For that reason, Dant Clayton's request for a TRO fails to comply with Federal Rule of Civil Procedure 65(b)(1)(B) and must be **denied**.

**B.**    <u>**Immediate and Irreparable Harm Before Adverse Party Can Be Heard**</u>

Dant Clayton argues that absent injunctive relief, it will suffer imminent and irreparable harm. Dant Clayton focuses on three types of injury: (1) potential harm to its business relationships; (2) potential misuse of its confidential and trade secret information; and (3) "damages in the form of time and resources it invested in the New Website's creation, development, and maintenance." (Filing No. 5 at 16). Dant Clayton has not identified specific facts clearly showing that any of these allegedly irreparable harms is sufficiently immediate to warrant an *ex parte* TRO. The Court will address each type of allegedly irreparable harm in turn.

First, Dant Clayton alleges that it is "faced with the prospect of losing valuable and long-term client and business relationships, loss of goodwill, [and] reputational harm" unless a TRO is entered (Filing No. 5 at 16). But Dant Clayton does not identify any "specific facts" showing that such harm would occur before Slocum can be heard in opposition to the Motion. The fact that Dant Clayton does not have access to the New Website does not, without more, show that Dant Clayton's business relationships might be imminently harmed. The Verified Complaint does not allege that the New Website was accessible to or used by any customers before it became inactive after Slocum's resignation, and it appears that Dant Clayton's "old" website is still functioning. Dant Clayton, https://dantclayton.com/ (last visited July 15, 2024). Dant Clayton alleges that "customers are not able to access the New Website after Dant Clayton's extensive marketing of its capabilities, which threatens to damage Dant Clayton's business and customer relationships, reputation, and customer goodwill." (Filing No. 1 at 9, ¶ 38). But this generalized allegation does not contain sufficient "specific facts" showing imminent harm to warrant *ex parte* injunctive relief.

Dant Clayton's allegations of potential misuse of proprietary information likewise lack the showing of urgency needed to justify an *ex parte* TRO. Dant Clayton alleges that it could be imminently harmed if its proprietary information "fell into the hands of a competitor" or Slocum's "potential future employment in the industry." (Filing No. 5 at 11–12). Neither the Verified Complaint nor the Motion alleges specific facts clearly showing that those threats of harm are imminent. Dant Clayton contends that Slocum is still in possession of its proprietary information but offers no declarations or other evidence to show that that the external hard drive in Slocum's possession still contains Dant Clayton's data and was not "wiped" like Slocum's company-issued laptop. Moreover, Dant Clayton offers no evidence that Slocum has disclosed or will disclose proprietary information to a competitor or seek employment in the same industry. These allegations without more, are not enough to justify imposition of a TRO. Dant Clayton's concerns about its proprietary information are reasonable, but it fails to clearly show it will be immediately injured before Slocum can be heard.

Third, Dant Clayton alleges it has suffered "damages in the form of time and resources it invested in the New Website's creation, development, and maintenance." (Filing No. 5 at 4). Dant Clayton does not allege any specific facts showing how, or to what extent, it has already incurred these damages, nor does Dant Clayton explain how immediate, *ex parte* injunctive relief is needed to remedy or prevent these damages. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (same).

Dant Clayton has not clearly shown that the risk of irreparable harm is so immediate that Slocum should not first be given an opportunity to be heard. For this additional reason, Dant

Clayton's request for a TRO fails to satisfy Federal Rule of Civil Procedure 65(b)(1)(A) and therefore is **denied**.[3]

### IV.     CONCLUSION

For the reasons explained above, the Court **DENIES in part,** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The requests for an *ex parte* Temporary Restraining Order ([Filing No. 4](#)) is **denied**. Dant Clayton's Motion for Preliminary Injunction ([Filing No. 4](#)) **REMAINS PENDING**.

Pursuant to the Court's July 15, 2024 Order ([Filing No. 10](#)), Dant Clayton is **DIRECTED** to serve Slocum with its Verified Complaint and Motion. The parties are **DIRECTED** to meet with the Magistrate Judge as scheduled, to discuss a discovery plan, briefing schedule, and the hearing on Dant Clayton's request for preliminary injunctive relief.

**SO ORDERED**.

Date: 7/16/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Erin Marie Shaughnessy
Fisher Phillips
eshaughnessy@fisherphillips.com

---

[3] To be clear, the Court is not presently deciding whether Dant Clayton has or will suffer "irreparable" injury absent preliminary injunctive relief. The Court is narrowly deciding that Dant Clayton has not clearly shown it will incur the type of immediate injury justifying *ex parte* injunctive relief, as required by Federal Rule of Civil Procedure 65(b)(1).