# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | | |
|---|---|---|
| DANT CLAYTON CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-00095-TWP-KMB |
| | ) | |
| ODELIZA J. SLOCUM, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Dant Clayton Corporation's ("Dant Clayton") Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 4). Dant Clayton initiated this action against its former employee, Defendant Odeliza Slocum ("Slocum"), after she failed to return certain confidential information and property—in particular, login credentials for a new company website and an external hard drive—following her separation from the company. Dant Clayton asserts claims under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.* ("DTSA"), the Indiana Uniform Trade Secrets Act, Ind. Code §§ 24-2-3-2 *et seq.* ("IUTSA"), the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, and Indiana common law.

The Court previously denied Dant Clayton's request for a temporary restraining order. Dant Clayton also asks the Court, among other things, for a preliminary injunction: (i) ordering Slocum to return all Dant Clayton property and information, including the new website credentials and hard drive; (ii) enjoining her from retaining, using, or disclosing the new website credentials, contents of the hard drive, and any other confidential information; and (iii) ordering her to make available for inspection and imaging, at her expense, any devices on which she accessed or retained Dant Clayton information or on which such information could be found. For the following reasons, the Court **grants in part and denies in part** Dant Clayton's request for a preliminary injunction.

## I.    <u>BACKGROUND</u>

Dant Clayton is a Kentucky corporation that provides products and services in the stadium and arena manufacturing industry (<u>Filing No. 1</u> ¶¶ 11 –12, 18–19).  In addition to its products, Dant Clayton's customer service has allowed it to accrue significant customer goodwill and relationships.  *Id.* ¶ 20.  Slocum joined Dant Clayton in June 2023 as a Preconstruction Coordinator.  *Id.* ¶ 24.  In that role, she primarily worked with customers and provided them quotes for Dant Clayton's products.  Because Slocum was in a client-facing role, she had access to Dant Clayton's proprietary information, including customer lists, client contact information, inventory, pricing, marketing strategies, and business plans.  *Id.*

Dant Clayton has implemented security measures to safeguard its confidential and trade secret information, including: requiring employees to sign confidentiality agreements and adhere to similar policies; limiting computer access to proprietary information to a "need-to-know basis"; limiting access to Dant Clayton's secure systems; and implementing IT security measures like firewalls, logins, and passwords. *Id.* ¶¶ 21–23.  On or around her first day, Slocum signed a Confidentiality/Proprietary Information/Intellectual Property Agreement (the "Confidentiality Agreement") (<u>Filing No. 1-4</u>).  The Confidentiality Agreement prohibits Slocum from removing, using, transferring, or disclosing Dant Clayton's confidential or proprietary information during or after her employment. *Id.* at 4.  The Confidentiality Agreement also prohibits Slocum from taking any original or copies of confidential or proprietary information off of Dant Clayton's premises upon leaving her employment. *Id.*

In November 2023, Slocum was tasked with creating a new Dant Clayton website (the "New Website"), which was intended to allow customers to submit inquiries, receive quotes or proposals, and view products (<u>Filing No. 1</u> ¶ 25).  The New Website was meant to co-exist with and supplement Dant Clayton's primary public website. *Id.*  Slocum created the New Website

through GoDaddy.com. *Id.* ¶ 27. She used her personal email to set up a GoDaddy.com account, and she set up automatic payments for the New Website's fees using her personal credit card, for which she was reimbursed by Dant Clayton. *Id.* While creating the New Website, Slocum had access to and used Dant Clayton's confidential and proprietary information. *Id.* ¶ 26. To minimize the unnecessary disclosure of the New Website's design features and incorporated information, Slocum was the only employee who knew the New Website's login credentials. *Id.*

In or around late February or early March 2024, Slocum reported that her company-issued laptop was not functioning. *Id.* ¶ 28. Dant Clayton worked with a third-party contractor to extract all of the files from the non-functioning laptop and place those files on an external hard drive (the "External Hard Drive"). After providing Slocum with a new company-issued laptop, Dant Clayton gave her the External Hard Drive so she could restore her files onto the new laptop. *Id.* ¶¶ 28–29.

In late March 2024, Slocum started missing work. *Id.* ¶ 30. After being absent for "a week or two", Dant Clayton discovered that Slocum's office had been cleaned out. Dant Clayton subsequently learned that Slocum had instructed another employee to remove her possessions from the office and deliver them to her husband. *Id.* On April 15, 2024, Dant Clayton employee Dan Hennessy ("Hennessy") reached out to Slocum via text message to inform her that Dant Clayton had assumed she resigned and had "off boarded" her (Filing No. 1-6 at 2). Hennessy told Slocum that she needed to return her company-owned property and stated, "Please let me know how you plan to handle that [return], we can send a prepaid shipping label to your home." *Id.* Slocum requested that the prepaid label be sent to her. *Id.*

Slocum returned her company-issued laptop, but before doing so, she "wiped the computer of all applications and data without authorization, which has prevented Dant Clayton from recovering work product and from accessing the New Website or any of its property and

information that existed on the computer." ([Filing No. 1](#) ¶ 36.)  Slocum did not return the External Hard Drive or send Dant Clayton the login credentials for the New Website.  *Id.* ¶¶ 33–34.

The New Website remained active for some time after Slocum's separation.  *Id.* ¶ 35.  Dant Clayton later observed that the New Website's contents had been removed and replaced with a "coming soon" banner, and a short time later, the New Website became inactive.  *Id.*  An error message now appears on the New Website page.  Dant Clayton, https://dantclaytonvps.com/ (last visited October 23, 2024).  Dant Clayton contends that Slocum accessed the New Website after separating from Dant Clayton and caused the New Website to become inactive.

On June 3, 2024, counsel for Dant Clayton sent a letter to Slocum ([Filing No. 1-8](#)).  The letter accused Slocum of ignoring Dant Clayton's requests for the login credentials for the New Website and of wiping her company-issued laptop to obstruct Dant Clayton's access to its own proprietary information.  The letter further stated that Slocum's actions violated her Confidentiality Agreement.  The letter demanded the immediate return of any Dant Clayton property in Slocum's possession, including "the log-in credentials and any other physical property or electronically stored information."  *Id.* at 3.  The letter stated that if Dant Clayton did not receive a response, it would "pursue appropriate remedies."  *Id.*  Slocum responded the same day, stating that she had "released all of dant [sic] Clayton's data and property" ([Filing No. 23-4 at 5](#)).  Counsel for Dant Clayton then responded, "You still have not provided the password and log-in credentials for the GoDaddy account," to which Slocum replied, "I do not have their log in information. My access was disconnected by dant clayton [sic] when they terminated my employment."  *Id.* at 4.  Counsel for Dant Clayton and Slocum had a call later that afternoon, *id*. at 3, during which Slocum stated she no longer had access to the New Website.

On June 10, 2024, after conferring with Dant Clayton, counsel sent Slocum another email stating he had "reason to believe that [she] provided inaccurate information" during the June 3, 2024 call. *Id.* at 2. Counsel asked Slocum to let him know whether she intended to respond further to the June 3, 2024 letter and threatened to seek attorneys' fees if Dant Clayton was forced to pursue legal action. *Id.* In her final email to Dant Clayton, dated June 10, 2024, Slocum again stated she did not have the requested information and told Dant Clayton to stop contacting her. *Id.*

Dant Clayton initiated this lawsuit on July 12, 2024, by filing its Verified Complaint alleging misappropriation of trade secrets in violation of the DTSA and IUTSA, violations of the Computer Fraud and Abuse Act, breach of contract, and civil conversion (Filing No. 1). The same day, Dant Clayton filed the instant Motion (Filing No. 4). On July 16, 2024, the Court denied Dant Clayton's request for an *ex parte* temporary restraining order, finding that Dant Clayton had not taken appropriate steps to notify Slocum of its Motion and had not shown it would suffer irreparable harm before Slocum could be heard (Filing No. 14). Slocum was served on September 27, 2024 (Filing No. 32), and on October 4, 2024, the Court held a hearing on Dant Clayton's request for a preliminary injunction (Filing No. 35).

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:

> (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if

the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.

*Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).  "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015).  "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (citations and internal quotation marks omitted).  "Stated another way, the district court 'sit[s] as would a chancellor in equity' and weighs all the factors, 'seeking at all times to minimize the costs of being mistaken.'" *Id.* (quoting *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

### III.  DISCUSSION

As previously stated, to obtain a preliminary injunction, Dant Clayton must establish the following factors: (1) that it is likely to succeed on the merits of its claims; (2) that it has no adequate remedy at law; (3) that it is likely to suffer irreparable harm in the absence of preliminary relief; (4) that the balance of equities tip in its favor; and (5) issuing the injunction is in the public interest. *Platinum Home Mortg. Corp.*, 149 F.3d at 726. The first two factors are threshold determinations. "If the moving party meets these threshold requirements, the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller, Inc.*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  The Court will address the threshold factors before addressing the remaining factors.

A.    <u>**Likelihood of Success on the Merits**</u>

A party moving for preliminary injunctive relief need not demonstrate a likelihood of "absolute success on the merits." *Valencia v. City of Springfield*, 883 F.3rd 959, 966 (7th Cir. 2018). However, the plaintiff "must demonstrate that 'its claim has some likelihood of success on the merits,' not merely a 'better than negligible' chance." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (quoting *Ty, Inc.*, 237 F.3d at 895). "What amounts to 'some' depends on the facts of the case at hand because of [the] sliding scale approach." *Id.* (citing *Ty, Inc.*, 237 F.3d at 895).

The Court will first address Dant Clayton's likelihood of success on its misappropriation of trade secret claims under the DTSA and IUTSA. "To prevail on a claim for misappropriation of a trade secret under the [DTSA], the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). Under the DTSA, a "trade secret" includes:

> all forms . . . [of] information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) (quoting 18 U.S.C. § 1839(3)). The DTSA defines "Misappropriation" as:

> an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.

*Id.* (citations omitted). The definitions of "trade secret" and "misappropriation" under the IUTSA are materially identical to the DTSA definitions. Ind. Code § 24-2-3-2.

Dant Clayton's undisputed evidence[1] demonstrates that Slocum was entrusted with Dant Clayton's confidential and proprietary information, including customer lists, client contact information, inventory, pricing, marketing strategies, business plans, and the login credentials for the New Website (the "Dant Clayton Confidential and Proprietary Information") (Filing No. 1 ¶ 24). The evidence also shows that Dant Clayton took several reasonable steps to maintain the confidentiality of this information, like requiring employees to sign confidentiality agreements, restricting employee access to areas of Dant Clayton's facilities, and instituting related policies. *Id.* ¶¶ 21–23. Indiana state and federal courts have frequently found this type of information to constitute protectable trade secret information when it is subject to similar confidentiality efforts. *BioConvergence LLC v. Attariwala*, No. 19-cv-1745, 2019 WL 6893704, at *9–10 (S.D. Ind. Dec. 18, 2019) (citing cases). Dant Clayton is thus reasonably likely to prove that the Dant Clayton Confidential and Proprietary Information contains protectable trade secrets.

Dant Clayton does not present any evidence of actual misappropriation of its Confidential and Proprietary Information but argues that an injunction should be entered to prevent threatened misappropriation. The DTSA authorizes injunctions "to prevent any actual or threatened misappropriation," 18 U.S.C. § 1836(b)(3)(A)(i), and the IUTSA prohibits both actual and threatened misappropriation, Ind. Code § 24-2-3-3(a). Dant Clayton argues that Slocum's threatened misappropriation is evidenced by her non-communication and continued refusal to return the External Hard Drive and New Website credentials. Although this evidence is limited, the Court finds that it is sufficient to create at least some likelihood of success of proving threatened misappropriation, particularly because the evidence is undisputed. The evidence shows that only

---

[1] As of the date of this Entry, Slocum has not responded to the Complaint. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, (7th Cir. 1980) ("Since a judgment of liability has been entered against the defaulting defendants, there is clearly more than a reasonable likelihood of success on the merits."); *see also McCleskey v. Hooks AV, LLC*, No. 18-cv-2397, 2018 WL 5255011, at *1 (S.D. Ind. Oct. 22, 2018).

a month or so after receiving the External Hard Drive—which contained all of the information on Slocum's company-issued laptop—Slocum inexplicably stopped coming into work, had another employee clear out her office, wiped her company-issued laptop, and stopped communicating with Dant Clayton. And to date, Slocum has refused to return the External Hard Drive. The mysterious timing and circumstances of Slocum's departure from Dant Clayton, coupled with her refusal to return the External Hard Drive, is sufficient to establish some likelihood of proving that Slocum is threatening to misappropriate Dant Clayton Confidential and Proprietary Information.

Because Dant Clayton has shown some likelihood of success on the merits of its misappropriation of trade secret claims, the Court will not address Dant Clayton's likelihood of success on its remaining claims. To obtain a preliminary injunction, a plaintiff need only show it is likely to succeed on at least one if its claims. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (citing *Ty, Inc.*, 237 F.3d at 897), *abrogated on other grounds by Nyken v. Holder*, 556 U.S. 418, 434 (2009).

## B.    Irreparable Harm With No Adequate Remedy at Law

Dant Clayton argues that without preliminary injunctive relief, it will suffer irreparable harm for which there is no adequate remedy at law. Specifically, Dant Clayton contends it stands to suffer damage to its reputation and goodwill and loss of customers. (Filing No. 5 at 16–17.) "[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). And other courts have found that a defendant's "pre-departure harvesting" of proprietary information, like Slocum's pre-departure acquisition of the External Hard Drive, may "compound[] the threat of misuse and misappropriation that could likely result in irreparable harm . . . for which there is no remedy at law." *Badger Daylighting Corp. v. Palmer*, No. 19-cv-2106, 2019 WL 4572798, at *12 (S.D. Ind. Sept. 20, 2019) (citing *Ackerman v. Kimball Int'l, Inc.*, 652 N.E.2d 507, 510–11 (Ind. 1995)); *see*

*Toyota Indus. Equip. Mfg., Inc. v. Land*, No. 14-cv-1049, 2014 WL 3670133, at *7 (S.D. Ind. July 21, 2014) ("[A]n ongoing threat of potential or actual misappropriation continues, given that the Court cannot conclude that Land no longer possesses or has access to Plaintiffs' confidential information and trade secrets."); *BioConvergence*, 2019 WL 6893704, at *12 and n.13 (stating "precedent clearly instructs" that the defendant's "taking and retention of documents belonging to [plaintiff] could result in irreparable harm for which there is no adequate remedy at law"). Dant Clayton has satisfied the second threshold inquiry for preliminary injunctive relief.

## C.    **Balance of Harms and Public Interest**

The final two questions are whether the balance of harms and public interest weigh in favor of preliminary relief. These factors may be viewed together. The Court "weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell*, 796 F.3d at 662.

Although Dant Clayton has only some likelihood of success on its misappropriation claims, the balance of harms weighs heavily in favor of Dant Clayton, at least with respect to most of its requested injunctive relief. Absent an injunction, Dant Clayton stands to lose goodwill and customer relationships, and it risks exposure of its confidential information. But Slocum would not be harmed at all by an injunction requiring her to return Dant Clayton's property (including the New Website credentials and External Hard Drive) and enjoining her from disclosing Dant Clayton Confidential and Proprietary Information, which would only require her to comply with her Confidentiality Agreement, the DTSA, and the IUSTA. However, Slocum would face significantly greater harm to her privacy and finances if she were also ordered to turn over for imaging and inspection, at her expense, any and all devices and accounts in her possession on which Dant Clayton Confidential and Proprietary Information was ever accessed, retained, or could be found.

There is no evidence that Slocum's other devices or accounts contain any such information, so the balance of harms weighs against an injunction ordering her to make them all available and requiring that she pay for their inspection and imaging.

In light of Dant Clayton's limited likelihood of success, the balance of harms only weighs in favor of an injunction requiring Slocum to return Dant Clayton's property, prohibiting her from sharing or using the Dant Clayton Confidential and Proprietary Information, and ordering her to produce the External Hard Drive and pay for its imaging and inspection. The balance of harms weighs against ordering Slocum to turn over any other devices or accounts at this stage. However, the Court will order Slocum to submit a sworn statement that identifies any devices or accounts in her possession on which she accessed or retained Dant Clayton Confidential and Proprietary Information, which would impose only a nominal burden on Slocum. If her statement identifies any such devices or accounts that Dant Clayton believes should also be imaged, then Dant Clayton may file an appropriate motion to modify the preliminary injunction.

As for the final factor, because Slocum does not have a right to possess, use, or disclose Dant Clayton Confidential and Proprietary Information, the public will not be harmed as a result of the requested injunction. *See BioConvergence*, 2019 WL 6893704, at *14; *Badger*, 2019 WL 4572798, at *12; *Toyota*, 2014 WL 3670133, at *8.

**D.    <u>Bond</u>**

"The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits, for the harm that an injunction entered before the final decision caused him." *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). Dant Clayton does not address whether a bond is appropriate in this case. Based on the relief requested, the principal risk to Slocum from an erroneous injunction is the costs associated with the inspection and imaging of her devices and accounts. Dant Clayton must therefore post a bond in the amount of $5,000.00.

## IV.    <u>CONCLUSION</u>

Dant Clayton has demonstrated that it has some likelihood of success on the merits of at least its misappropriation of trade secret claims.  The evidence in the record shows that after separating from Dant Clayton, Slocum refused to return Dant Clayton's protectable trade secret information and now threatens to misappropriate that information.  Some of Dant Clayton's damages, should it succeed on its misappropriation of trade secret claims, would be difficult if not impossible to quantify, and the harm to Dant Clayton outweighs any potential harm to Slocum with respect to most of the injunctive relief requested.  Considering these factors, Dant Clayton is entitled to a preliminary injunction.

Accordingly, Dant Clayton's Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 4) is **GRANTED IN PART and DENIED IN PART**.  Pursuant to Federal Rule of Civil Procedure 65(d), the Court issues a preliminary injunction as follows:

(i)    Slocum must return to Dant Clayton any and all of Dant Clayton's property in her possession within **<u>thirty (30) days of her receipt of this Entry</u>**, including but not limited to the New Website credentials, External Hard Drive, and all other documents, materials, and data (and copies thereof), in tangible, electronic, or intangible form, containing Dant Clayton Confidential and Proprietary Information;

(ii)    Slocum must refrain from retaining, copying, duplicating, using, or disclosing to any third party the New Website credentials, the contents of the External Hard Drive, and Dant Clayton Confidential and Proprietary Information;

(iii)    Slocum must make available for inspection and imaging, at Slocum's expense, the External Hard Drive; and

(iv)    Slocum must submit a sworn statement within **<u>thirty (30) days of her receipt of this Entry</u>** identifying any devices or accounts in her possession on which she accessed or retained Dant Clayton Confidential and Proprietary Information or stating that she has no such devices or accounts in her possession.

Dant Clayton shall post a bond in the amount of $5,000.00.

12

**SO ORDERED**.

Date:  10/28/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Erin Marie Shaughnessy
FISHER PHILLIPS
eshaughnessy@fisherphillips.com

John W. Stapleton
FISHER & PHILLIPS
jstapleton@fisherphillips.com

Matthew Thomas Sharon
FISHER PHILLIPS LLP
msharon@fisherphillips.com